IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

FRANKI LYNN HOSTETTLER,

                              Plaintiff,

        v.                                              Civil Action No. 3:10-CV-279

AUTO-OWNERS INSURANCE COMPANY,

                              Defendant.


## MEMORANDUM OPINION

THIS MATTER is before the Court on cross-motions for summary judgment (Dock. Nos. 9, 12). For the reasons that follow, the Court will GRANT Auto-Owners's Motion and DENY Hostettler's Motion.


## I. BACKGROUND

The following facts are not in dispute. Franki Lynn Hostettler was injured in a motor vehicle accident in Sussex County, Virginia, on August 29, 2009. Pavel David Titon Goska, the driver of the vehicle in which Hostettler was riding as a passenger, was allegedly responsible for the accident. Goska is insured under an automobile liability insurance policy issued by Liberty Mutual Insurance Company. The limit of liability coverage under that policy is $100,000 for injury to each person. Liberty Mutual has offered its policy limit

1

to Hostettler. The damages Hostettler is legally entitled to recover allegedly exceed the available liability coverage of the Liberty Mutual policy.

Hostettler's grandparents, Frank Wayne and Clara G. Mayton, are the named insureds under an automobile policy issued by Auto-Owners. Hostettler was allegedly a resident of her grandparents' household at the time of the accident and therefore would qualify as an insured under the Auto-Owners policy for purposes of uninsured and underinsured (UM/UIM) coverage. The Auto-Owners policy issued to Hostettler's grandparents insures four motor vehicles, and the limit of UM/UIM coverage for each vehicle is $100,000.

The insurance policy contains a "Limit of Liability" section that includes the following statements:

A. The limit of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

The limit of Property Damage Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit for all "property damage" resulting from any one accident.

> This is the most we will pay regardless of the number of:
> 1. "Insureds";
> 2. Claims made; or
> 3. Vehicles or premiums shown in the Declarations.

(Joint Stipulation of Facts (Joint Stipulation), Ex. A, pt. 3, at 11-12). For each of the four vehicles covered under the Auto-Owners policy, the "Automobile Policy Declarations" lists the limit of uninsured motorist bodily injury coverage as "$100,000 ea pers/$300,000 ea acc." (Joint Stipulation, Ex. A, pt. 1, at 4-6).

Hostettler contends that the Auto-Owners policy is not ambiguous and affirmatively promises to provide $400,000 in stacked UM/UIM limits. In the alternative, Hostettler asserts that the policy is at worse ambiguous and therefore provides $400,000 in stacked UM/UIM limits. Auto-Owners argues that the policy is not ambiguous, that UM/UIM coverage on each of the four vehicles cannot be stacked, and that the limit of UM/UIM coverage is $100,000.

The parties seek a declaration as to whether the UM/UIM limit of the Auto-Owners policy is $100,000 or $400,000 and have filed cross-motions for summary judgment.

## II. LEGAL STANDARD

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir.

2003) (internal quotation marks and citations omitted). In making its decision, a court must look to the affidavits or other specific facts pled to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1996). "[I]f the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c), it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006). Summary judgment should not be granted, however, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When faced with cross-motions for summary judgment, the standard is the same as that applied to individual motions for summary judgment. The court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol, 316 F.3d at 523 (internal quotation marks omitted). If the court finds that there is a genuine issue of material fact, both motions must be denied. 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 2010). However, "if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." Id.

### III. DISCUSSION

The Supreme Court of Virginia announced the rule regarding stacking UM/UIM coverage in Goodville Mutual Casualty Co. v. Borror (Borror), 275 S.E.2d 625 (Va. 1981). The court in that case held that "it is now the rule in Virginia that the stacking of UM coverage will be permitted unless clear and unambiguous language exists on the face of the policy to prevent such multiple coverage." Borror, 275 S.E.2d at 627. The Borror court determined that "any ambiguity contained within a policy will be construed against the insurer." Id. at 627. The Supreme Court of Virginia later emphasized in Virginia Farm Bureau Mutual Insurance Co. v. Williams (Williams) the requirement that anti-stacking language must be considered in context of other policy language. 677 S.E.2d 299, 303 (Va. 2009). Under Virginia law, "[c]ourts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." Copp v. Nationwide Mut. Ins. Co., 692 S.E.2d 220, 224 (Va. 2010).

After setting out the Virginia insurance stacking rule and considering anti-stacking language in Borror in 1981, the Supreme Court of Virginia again considered anti-stacking language in Williams in 2009. The court reached different decisions in the two cases, finding clear and unambiguous anti-stacking language in Borror but finding sufficient ambiguity in Williams to allow stacking.The policy at issue in Borror provided coverage for two vehicles, with separate and unequal premiums for each vehicle. The policy did not identify separate premiums for UM coverage. Borror, 275 S.E.2d at 626. The policy also included the following anti-stacking policy provision in its "Limits of Liability" section:

> Regardless of the number of . . . motor vehicles to which this insurance applies,
>
> > (a) the limit of liability for bodily injury stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", [sic] the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

Id. at 627 (emphasis added by Borror court). The court noted that other jurisdictions were split over whether that language was ambiguous, id. at 627-28, but "conclude[d] that the language of [the] policy, viz., '[r]egardless of the number of . . . motor vehicles to which this insurance applies,' is clear and unambiguous and requires the construction that stacking is not permissible." Id. at 628. The court held that "[t]he mere fact that two vehicles are insured and two separate premiums are charged is of no consequence in light of the express language of the policy." Id.

The Supreme Court of Virginia reached the opposite conclusion in Williams, where the following anti-stacking language was at issue:

> **Limits of Liability**. Regardless of the number of . . . motor vehicles to which this insurance applies, a) [i]f the schedule or declarations indicates split limits of liability, the limit of liability for bodily injury stated as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident . . . .

Williams, 677 S.E.2d at 300-01. Although the court reached a different outcome in Williams than it did in Borror, it did not do so by overturning Borror or by determining that the anti-

stacking language itself was unclear or ambiguous. Rather, the court determined that the Williams policy "contain[ed] a significant difference" from the Borror policy; specifically, the Williams anti-stacking language did not indicate its limits for each person but referred the insured to the declarations page to determine the applicable limits. Id. at 303. While that difference in form was "significant," it did not create the ambiguity that led the court to allow stacking. The Williams policy's declarations page, which specified the premiums and limits for three different vehicles, identified two different levels of "each person" limits for UM/UIM coverage. Two vehicles had UM/UIM "each person" limits of $300,000, while the third vehicle had an "each person" limit of $250,000. Id. at 301. The court determined that the fact that the declarations page provided inconsistent levels of coverage, when combined with the anti-stacking language, "[left] unresolved the question whether all three separate limits for 'each person' apply." Id. at 303. Thus, it was "[t]his disparity in the stated limits of liability for 'each person' [that] manifest[ed] an ambiguity regarding the extent of total coverage for 'each person' under the policy." Id. Since ambiguities are resolved against the insurer, the court allowed Williams to stack the three "each person" limits. Id.

The Auto-Owners anti-stacking language is not identical to either the language deemed unambiguous in Borror or that found to be ambiguous in Williams; rather, it contains elements of both. As in both cases, it indicates that the relevant limit applies "regardless of the number of . . . [v]ehicles" insured. (Joint Stipulation, Ex. A, pt. 3, at 11-12). Unlike the Borror policy language, however, it does not state an "each person" limit on a schedule of limitations but instead refers the insured to a separate declarations

page—where limits are listed for each vehicle—to determine the relevant limit, as in Williams. Specifically, the anti-stacking provision at issue indicates that the "limits of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorists Coverage is [the] maximum limit of liability for all damages" and that "[t]his is the most [Auto-Owners] will pay regardless of the number of . . . [v]ehicles or premiums shown in the Declarations." Id. The declarations pages list the "$100,000 ea pers" limit for each vehicle. Although this anti-stacking provision's construction most closely resembles that found to be ambiguous in Williams, the Auto-Owners policy clearly and consistently lays out the "each person" UM/UIM limit of $100,000 for each of the four vehicles identified in the declarations using language found to be unambiguous in Borror. The ambiguity created in Williams from inconsistently declared limits is absent here.

Hostettler sets forth numerous unpersuasive arguments. First, she argues that Auto-Owners expressly promised $400,000 in "each person" UM limits because the "$100,000 ea pers" language appears on the declarations pages four times, once for each vehicle. This interpretation is inconsistent with the Virginia Supreme Court's approach in Williams, where the court allowed stacking based on inconsistencies on the declarations page, not based on the number of times the limits appeared.

She also argues that the Auto-Owners policy is not unambiguous because it does not specify any limit lower than $400,000. No authority supports the assertion that Auto-Owners must state specifically that it will not provide $400,000 in UM/UIM coverage. The Virginia Supreme Court has held that the"regardless of the number of . . . [v]ehicles"

insured language is sufficient to indicate the maximum coverage and prevent stacking, absent any ambiguity. See Borror, 275 S.E.2d at 628. That language is present here.

Finally, she attacks the construction of the anti-stacking provision, arguing that it is not unambiguous because it is not identical to the Borror policy language, because it contains three paragraphs instead of two, and because the paragraph with the number-of-vehicles limitations language follows a paragraph on property damage liability, not bodily injury liability. The Williams court clearly emphasized content and context over construction in anti-stacking provisions, and it did not find the Williams provision to be ambiguous because it was formatted differently than the one found to be unambiguous in Borror. When the number-of-vehicles limitations language is considered in the context of the entire "Limit of Liability" section, see Williams, 677 S.E.2d at 303, it is clear that the number-of-vehicles provision applies to both bodily injury and property damage liability. The internal inconsistencies that created the ambiguity in Williams are simply not present here, regardless of any similarities in construction.

The anti-stacking language in the Auto-Owners policy, while not identical to the Borror policy language, clearly and unambiguously communicates that the "each person" limit identified in the declarations is the most coverage provided, "regardless of the number of . . . [v]ehicles or premiums shown in the Declarations." Hostettler's arguments to the contrary neither comport with the Supreme Court of Virginia's analysis of anti-stacking provisions nor follow from a reasonable reading of the policy.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Auto-Owners's Motion for Summary Judgment and DENIES Hostettler's Motion.

Let the Clerk send a copy of this Memorandum to all counsel of record. An appropriate order will issue.

It is SO ORDERED.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this __7th___ day of October 2010